And our third case of the day is United States v. Garris, Ms. Hoffman. Good morning, Your Honors. May it please the Court. Good to have you with us, Ms. Hoffman. Thank you. May it please the Court, Megan Hoffman on behalf of Mr. Garris. Your Honors, as this Court is aware, Mr. Garris has raised several issues regarding the Fourth and Fifth Amendment and also challenges to his supervised release conditions. To begin, the Fourth Amendment, as this Court knows, is governed by reasonableness. And here, the police officers acted unreasonably in several ways. First, they used excessive force to tackle Mr. Garris to the ground, causing an injury to his face. The force was so extreme that the fellow officer had to tell the tackling officer to stay calm and describing him as, you were kind of committed, weren't you? This was all for misdemeanor or suspected misdemeanor offenses committed by Mr. Garris. When I watched the video, I hypothesized that I don't see it the same way you do. But my question is, is that if there's any ambiguity about that, don't we have to take it in the light most favorable to the government, given where we are, the denial of motion to suppress? Your Honor, I think that the standard governing the facts here, whether the district court clearly erred in making certain findings, and I think that even if this Court were to find that the officer wasn't the person that pushed Mr. Garris to the ground, he continued the force once he was on the ground, causing the injury to his face. And I think that there are at least, that we can point to one significant point, for example, that the police officer, the tackling officer here, testified that he did not reach Mr. Garris. But you're calling the tackling officer, like, assumes the question, right? It does, Your Honor. And certainly, I mean, we're making the argument here that the district court was erroneous in making its finding to the contrary. But I think that in this… I need to watch the video and find that it clearly shows that. And, Your Honor, I think at our opening brief, and I would urge the Court to look at the color photos. I saw some of the black and white photos as I was prepping for the argument this week, and they don't show them as clearly. But I think that in the color photos in the briefing, the officer testified that he didn't reach Mr. Garris until he was already on the ground on his hands and knees. And I think that the stills that we have in the brief clearly show that to be wrong. He was essentially on top of Mr. Garris by the time he reached him. And then Mr. Garris fell to the ground. And certainly at that point, the officer was not truthful. It was clearly erroneous that he had not reached Mr. Garris until he was already on the ground. You're saying the judge made a finding to the contrary of that? I am, Your Honor. Yes, that's correct. So the judge clearly erred in that respect? Correct, Your Honor. That is correct. And he did make… Is that the only point that you say the judge clearly erred in its recitation of the facts? On that particular argument, Your Honor, we're arguing that, in fact, he did tackle Mr. Garris. And that, in fact, that was the reason that Mr. Garris was thrown to the ground and an injury was caused to his face. And I think in this particular instance, the seizure was particularly unreasonable because the tackling officer did not give Mr. Garris a chance to comply. He never said, police. He never said, stop. He never said, you're under arrest. And under those circumstances, a reasonable person, which is the standard as Mr. Garris was, a homeless black man in Charlotte, North Carolina, would have left as he saw the officer approach. And recently, the Supreme Court in Langvey, California, found that a person suspected of misdemeanor for minor offenses might flee for innocuous reasons and in non-threatening ways. And here, the officer did not even give Mr. Garris the opportunity to comply with his demands. Under Edwards and under Rulo, we believe that suppression is the appropriate remedy for this excessive use of force. As we noted in the briefing, in this court's decision in Edwards, the Clark, I'm sorry. I'm from Las Vegas, so I keep deferring to Clark County. The Charlotte Mecklenburg Police Department has a history of excessive force against its black residents. And it's likely to occur again, particularly in the context of this, a misdemeanor, suspected misdemeanor offenses. They did, in fact, cause injury to Mr. Garris. And this suppression would be an appropriate deterrent where excessive force is used in the absence of exigency. In this particular instance, we argue that under, like I said, under Rulo and under this court's case in Edwards, that Mr. Garris was, in fact, seized unreasonably and that the evidence found as a result of that seizure would be suppressed. The judge found there was probable cause, right? He did find probable cause, Your Honor. And, of course, we disagree with those arguments. We're not talking about reasonable suspicion here. We're talking about probable cause. The government argued both. Why wasn't there probable cause that he was attempting to break and enter the car? Your Honor, I think— I mean, he was—and it was 1.30 in the morning. He was casing the area, peering into vehicles. He then pulled down his shirt and used the shirt to cover his hand to try to open the vehicle. He was on a bicycle, so there was no reason to infer that this could have been his car. Why isn't that probable cause to arrest for attempted entry into a car? Your Honor, I think my response to that is that Mr. Garris, under those facts, I think that in this particular instance, the government had to prove both that Mr. Garris had attempted to break into the car and also that he had the intent to steal something within. Well, what other reasonable inference is there that he was trying to get into that car? Your Honor, I think that there—I don't—I could think of another reason. I mean, for example, I accidentally tried to get into a car last week that I thought was my parents' rental car, right? I think that sometimes— Did you walk around looking in every other car to see if there were valuable things? I did not, Your Honor. 1.30 in the morning? It was definitely not 1.30 in the morning, Your Honor. I agree. And, you know, I think in this context— Did you put your shirt over your hand so you didn't leave fingerprints on it? I did not, Your Honor. And I don't—again, I think that in this particular instance, we would argue that what they observed was Mr. Garris attempting to get into the car, and I think that— Is that a felony under North Carolina law? It is not, Your Honor. In North Carolina, breaking and entering is a felony, but a misdemeanor reduces it by one level, which places it to a category—I believe it was a Category I felony—or a misdemeanor. And so under these circumstances, it was, because it would have been an attempted breaking and entering, it would be a misdemeanor. I think it's also of note that when police arrested Mr. Garris, that they noted in their police report— Was the police officer supposed to make a distinction in his mind between whether the attempt to break into the car at 1.30 in the morning was a misdemeanor or a felony in determining whether he has reason to apprehend somebody? Your Honor, I think that in this case, the officer should have known that it was only an attempted breaking and entering, and I think they even testified to that fact at the evidentiary hearing. You know, the law in North Carolina is pretty clear that when there's a felony but it's an attempt, it reduces the level by one level, which in this case would have been a misdemeanor, and the officer should have known that under Heinen. I also think, Your Honors— Those distinctions that you talk about are confusing to judges, lawyers. Why wouldn't they, you know, the officer, why wouldn't they get the benefit of a more reasonable interpretation or the more favorable interpretation to them in a circumstance where he's in the middle of the night in a situation like this? Your Honor, I mean, I think in this case, we also have to look at the totality of the circumstance.  The orange BMW was earlier in the evening, and that officer testified specifically that he did not— I had an impression of me, that orange BMW. I don't know if I even seen it. That is a memorable, memorable case, Your Honor. I think that earlier in the, that was earlier in the evening, and that particular officer, who also happened to be the tackling officer, testified that he did not intend to arrest Mr. Garris for looking into the BMW. Indeed, when officers saw him looking into the cars in the diner parking lot, they again did not arrest him. Even, you know, if they're saying they believed— Going around the different cars? I think it's unreasonable, Your Honor, that they didn't arrest him at that point if they believe they have reasonable— if they believe they had probable cause to do so. Sort of like 404B evidence. Right, but for here, we have to show probable cause, right, for them to be able to arrest him. I'm sorry? Sort of like a crime spree. Well, except he didn't actually, they never saw him actually taking anything. There was no evidence that Mr. Garris had actually taken anything of value, and the police let him go from the diner. And so— You said just a moment ago, it was unreasonable, and I assume you mean that in the technical sense on the Fourth Amendment, to not arrest him once they had information that he had committed the crime. I think in this case, Your Honor, if they really thought he was a danger— What is the—so what principle is that, right? So we think about in drug trafficking cases all the time, we allow investigations to continue to understand the scope of the activity. Indeed, in like extremely offensive sex trafficking cases, those cases aren't immediately ended in an effort to understand the scope of the activity that's taking place. What Fourth Amendment principle or case do you have that suggests to us that as soon as you know that some crime has been committed, you must stop your investigation and arrest him? Your Honor, I think that I'm just arguing it being reasonable under the totality of the circumstances. This isn't like a drug case. This isn't like a sex crime case where it isn't— It's a crime spree is what it is, right? But they never—in a drug case, when they see perhaps a hand-to-hand transaction or they have an informant who testifies that the defendant had sold him drugs, you have that there. You know that he has committed a crime. In this instance, they never saw him take anything out of any cars. So if they truly believe— They don't have to take anything to commit a crime, right? Well, in this instance, I mean, I would argue that neither party has been able to point to a case in North Carolina where a attempted breaking and entering has been sustained on facts such as these. But in any event, I think that if they truly thought that he had committed a crime, they should have arrested him then rather than allowing him to go forth and break into other cars, which is what they did. Is there any case that—I just want—I don't understand whether— That seemed to be a central argument that you're making, that it's unreasonable to not arrest somebody the moment that you have probable cause to believe that they've committed a crime. And that idea just seemed totally foreign to me. Your Honor, I mean, I think my example would be like in Terry, where he observed them committing a crime, approached them, and immediately patted them down. If this was a Terry stop, perhaps at the diner, we would argue that, fine, they could have approached him to see what he was up to. But they didn't do that here. And so that is the content. But Terry thinks for safety. Correct. But, I mean, in Terry, I will say that the officer approached them because he thought he was casing a store in order for him to do research. They don't need probable cause for a Terry stop. Right. Here is a probable cause. No, I agree. And if at the diner they believed that they had—I mean, if they had reasonable suspicion, I wouldn't have objected had they approached him to ask him questions. But that is not what they did here. And instead, they tackled him in the park. I'm going to move on. Can I ask just for you to talk a minute about, with my colleague's permission, the supervised release conditions that you—I know you raise a number of arguments, and this is a—we've had some developments in the law since this happened. But can you talk about—give us the examples of the ones that you think are most concerning to you? Sure. I mean, Your Honor, I think that I filed a 28-J earlier this week just for clarification because I, you know, realized it could have been a little clearer, particularly in light of our local district's ever-changing standing order for these supervised release conditions. But I would note, for example, that I still believe that condition number seven, which is the restricting travel condition, the court here found that it was consistent with the guidelines, and yet it's clearly inconsistent with the guidelines. The court didn't explain how it was consistent with the guidelines. For the ones that have actually already been changed by our district court, that would be condition number eight, which was the requiring self-incrimination. They since have amended that condition to advise the defendant of his Fifth Amendment rights, which they did not do in Mr. Garris' case. In condition number nine, they have added in our— I'm sorry. Make sure I'm understanding. Back up just a half-second on that. So eight and nine, these are conditions that have been changed by the local rules but were not changed with respect to your client. It was after judgment. Right. Correct. Wait, what was after? The amendment to those. Right, but they didn't amend his judgment. They didn't amend your client. Correct. And so your point is, whatever we think about anything, those need to go back to be reconsidered by the district court. I think that's right. I think also condition nine, which is the residence condition, they added a timeframe notification. In condition 12, which is the contact with felons, this court recently, United States v. Oliver, remanded a very similar condition where there was no evidence that the defendant was engaging in his crime with another felon, and so it was not reasonably related to the case. But in this case, the court did clarify that Garris had no known felon relatives, right? He only clarified that as to relatives, Your Honor, but I would note, for example, that Mr. Garris had been working as a barber for some time, and perhaps a client of his might be a felon, and that could place him in violation of that particular condition. And so for the same reason that this court reversed in Oliver, I think it should reverse here. And then finally, I think probably the primary one that we also objected to was condition 17, which was restricting drug use. Say 17? Yes, Your Honor. And in that particular instruction, the government, or excuse me, the district court eliminated the language of if required to do so by the probation officer, finding that I assume, based on this court's precedent, that it was an improper delegation that probation went to this guy. In order to satisfy your vagueness challenge, what would the court have to say regarding use of alcohol and unlawful controlled substances? Your Honor, I think that one is definitely trickier. I think that if the court could just provide, you know, excessive alcohol to the point of perhaps .08, you know, or whatever the state. You're saying the court would be required to give a blood alcohol? I think that that's often what happens. I mean, that is how they determine that he has engaged in excessive use of alcohol, is they will administer a breathalyzer or a urine test. And so in this case, it would be, you know, if he had an illegal limit. How does that put him on any more notice, right? I mean, all right. I mean, that's part of the challenge that we face is that you can drink and not necessarily know where you are on that scale. Like some people keep a breathalyzer in their car for that reason, right? But, you know, we don't require that. I think so. I mean, excessive use doesn't necessarily mean illegal, you know, to the point where you wouldn't be able to drive. I think an average citizen such as myself knows that if I'm going to have a drink, that I, you know, there is a lawful limit in which I can engage in that. And here Mr. Garris doesn't have any information as to what is excessive. It seems to me that these restrictions are necessarily general. In other words, you have to conduct yourself reasonably. And the court can't really give somebody a blood alcohol level reasonably because then would they be required to purchase a breathalyzer or submit to a blood test every time that they ingest any alcohol? So it seems to me the vagueness argument really comes if the person is charged with a violation. And then you say, no, he was never really put on use as to what excessive was. He may have had three drinks, but to him that wasn't excessive. And if the court had wanted to pin it down, it could have. It seems to me that that's where the vagueness comes down because a court can't really quantify how many drinks a given person should have. The court doesn't know how they react to alcohol. Your Honor, if I may, my time is over. If I can just answer. No, you get questions. If I can answer, yes. Thank you. Any more you get. Thank you. Your Honor, I agree with that. I think that that shoehorns, however, into the argument that it's an improper delegation to probation because unlike the case in Comer where there was information provided to the defendant at the sentencing hearing as, or excuse me, at the revocation hearing as to what would be prohibited, in this particular instance probation is the person that gets to decide that it's not something left up to the judge. And so we argue that Mr. Garris does not have notice of how he could violate that condition. Thank you, Your Honor. Thank you. Mr. Doshi. Mr. Doshi. Good morning, Your Honors. And may it please the Court, Samir Doshi for the United States. The District Court did not err in denying Mr. Garris' motion to suppress and its judgment of conviction as well as the sentence that it imposed should be affirmed. I'm happy to start wherever the Court would. Can we start with the supervised release? I want you to come back and say whatever you want on the other issues too, but can you start there because there seem to be a couple here that I'm particularly interested in you talking about. But can you talk about, you know, particularly, you know, 8, 9, 12, 17? Sure, Your Honor. So let me start with the first one you mentioned, which is number 8. We understand Mr. Garris' objection to number 8 is that it violates his right against self-incrimination. But this, the Supreme Court has held in the Murphy case, for instance, that truthfully answering questions offered by the probation officer does not violate an individual's Fifth Amendment rights because an individual can maintain to the probation officer a Fifth Amendment objection and can retain the privilege against self-incrimination. Of course, Your Honor, as with all of these conditions, including condition number 8, it is the District Court, Judge Conrad, that retains ultimate authority in determining whether a condition was violated and whether a punishment should be imposed. It seems to me, Mr. Doshi, that we have just kind of a mess here, if you don't mind my saying so, because the trial court didn't have the benefit of our McMillan decision when it imposed these conditions or any of the cases since. And we know now, based on Van Dong, for example, the court can't give to the probation officer the authority to decide whether a defendant will participate in drug treatment. We know that with regard to the question of submitting to a search without a warrant based on reasonable suspicion, we know that the sentencing guidelines talk about that in context of sex offenders. But the judge didn't address why, even though this man's not a sex offender, it should nevertheless apply to him. So we've got some of these special conditions. We've got some of these general conditions. The court changed some of them, but the record here is pretty clear as to what occurred in the district court. And it just seems to me maybe it makes sense to have the district court just start over again with the benefit of all the case law, our Boyd case and the other cases, because they seem to point in a very clear direction that the court has to be specific. Yes, Your Honor. Wouldn't that be the easiest way to handle this? With respect, Your Honor, Judge Keenan, I would disagree. And I think the district court ably discharges responsibilities here. The United States agrees? I would disagree, Your Honor. I don't think a remand would be appropriate on the conditions. I was going to ask, why don't you just agree with Judge Keenan, and that's part of the case. Why don't we have to reverse this? I mean, just on its face, why don't we have to reverse this shall submit to search without a warrant based on reasonable suspicion and or consent? Doesn't the court have to give some justification for that? I mean, this is in the sentencing guidelines for sex offenders. It's not for people in his situation on a gun charge. So we don't have any explanation, and there were non-frivolous arguments that it was an arbitrary intrusion by government, excuse me, by law enforcement. And the guidelines recommend this for sex offenders. And the court just said, fine. So why don't we have to reverse that? Let's just start with the most obvious one, to my point of view. Of course, Your Honor. I have two responses to that. So first, and I apologize if I'm mixing up my dates, my understanding is that the McMiller decision, which vacated the judgment of supervised condition by Judge Conrad, was 2020, whereas the sentencing here was January 2021. And so on that narrow point, Your Honor, Judge Conrad did have before him this court's decision in McMiller, although I'm not sure he had before him Boyd. Leaving that aside, and talking about specifically the reasonable suspicion condition, Judge Conrad mentioned the PSR and the defendant's criminal history, which include multiple instances and convictions of lying to officers and providing fictitious information, including declining to provide truthful addresses. That justifies an imposition of a condition where, to ensure that the defendant is providing truthful information to law enforcement, only after the probation office has a reasonable suspicion, they can search some of the defendant's belongings. So that is, Judge Keenan, where we see the nexus between the facts of this case and the imposition of the condition. Okay. And what about the participation in the substance abuse program, another special condition imposed by the court? Yes, Your Honor. So the way we read the last two sentences of Condition 17, which goes to the treatment program, is that Mr. Garris is obligated to attend a treatment program, but if the probation office determines that treatment is not warranted, it can absolve Mr. Garris of compliance with that requirement. And that does not run afoul of this court's non-delegation jurisprudence because of Comer and because of Van Don. I'm happy to expand on that, Judge Keenan, but I know there are other conditions as well. So to expand on that point. No, it's that it's the negative. So as long as the court says, you must do this unless there's an exception, that doesn't violate the non-delegation. If instead it says, you don't need to do it unless the probation officer requires you, that's giving the power to the probation officer. And that's Comer. That's exactly right, Your Honor. In Comer, the condition was you shall not have a social media account except as probation lets you. And that was found not to violate the non-delegation doctrine of Article 3. And we think the same exact logic would apply to the last two sentences, sorry, of Condition Number 17. Judge Richardson, I believe you asked about Condition Number 16 as well. It may be mistakenly excessive use of alcohol. Or phrased differently, Judge Richardson, if there are any other conditions that I could help the court address, I'm, of course, happy to help the court address them. Why not, what about 12? I think 12, the felon one, I wasn't as concerned about the alcohol, but the contact with the felon, how do we have enough here in light of Oliver? We think it's by virtue of the District Court's reference to Mr. Garris' extensive criminal history. At least one, the cocaine conviction in 92, which was intent to sell to others, and of course the purchase of cocaine. 92. It's a long time ago, Your Honor. But that didn't deter Mr. Garris from future criminal conduct. He has an armed robbery conviction in 97. Any reason to think that any other than the intent to distribute, are there any other of his criminal convictions that suggest that he was involved with, that they were joint endeavors? There are not, Your Honor, but notwithstanding that fact, we think the condition is still substantively reasonable for at least two independent reasons. So the first reason is that the U.S. Court's own website explains the felon condition, and one of the reasons it gives is that social science evidence indicates not interacting with other felons helps the defendant reacclimate back into society. And that is true in this case as well, given Mr. Garris' long and extensive criminal history, including the facts of this particular case. So that's, I think, point one, Your Honor. And point two, the District Court did in fact consider how the felon condition was going to impact Mr. Garris. Judge Keenan, as you pointed out, talking to my friend on the other side, it asked Mr. Garris' counsel, are there any felons in Mr. Garris' family that he's aware of? And lastly, Your Honor, the felon condition only applies if Mr. Garris knowingly interacts with the felon, and in addition to that, does so without getting approval from his probation officer. So if he's got a regular customer at the barbershop whom he knows is a felon, and that's going to impact his livelihood, Mr. Garris can just ask the probation officer, this is part of what I have to do with my job, I'm cutting this individual's hair, and there should be no problem with that. So unless there are any further questions from the Court, Your Honor, the government rests on the arguments contained in its briefing and would once again request respectfully that the District Court's judgment be affirmed. Thank you very much, Your Honor. Very good. We, uh... Pardon? You got rebuttal. Just a couple minutes. I should be brief, Your Honor. Yeah. Your Honor, I just wanted to, and I apologize for not offering it earlier, but one of my colleagues advised me that in another case in front of this Court, the government recently agreed to remand based on the changes in the District Court's standing order on similar points that we have here, and that was in United States v. Samuel Harris. It's docket 21-4063, and my understanding is that the government did agree to remand, or they did a joint remand before even argument. So that happens sometimes, but it strikes me that that sort of depends upon the specifics of the case. What did the District Court say or not say? And so, you know, I'm curious if you'll take just a minute, take, for example, the substance abuse program. It seems like to me this positive-negative difference on a delegation idea. When we think about it in sort of congressional non-delegation cases, that makes a difference. It seems like it makes a difference here. Can you help me understand why you disagree with the government on that? Your Honor, I think I disagree with the government because the District Court's amendment clearly adopted our position. All right, but that doesn't change it, right? That doesn't make it, like, the District Court's standing order doesn't overrule Comer, right? For example. Sure, and this isn't what we're talking, I mean, in this, if I can just read you the first line of the actual condition, the defendant shall participate in a program of testing for substance abuse if directed to do so by a probation officer. And the remaining two paragraphs talk about how the probation officer will supervise the participation in that program, but that is still requiring, it is the probation officer's decision whether or not he participates in drug treatment, not the court's. And so the District Court, in recognizing this court's guidance in Boyd, Ross, McMillan, and even in Comer, eliminated that portion, and now it just reads that the defendant shall participate in a program of testing for substance abuse, period. Then it explains how the probation officer will monitor and supervise the defendant in that program. That is consistent with Van Damme. And so in this particular instance, I think that the condition itself is just on its face, an improper delegation to probation. I think Condition 18, we would agree, Your Honor, that the government, or the District Court, never addressed our argument that it is only for sex offenders. And so merely reciting that this is consistent with the guidelines isn't enough under this court's authority where we presented a non-frivolous argument and he didn't address it. But, I mean, we do have the, instead of, let me ask the question instead of give a statement. So why doesn't the, his criminal history and repeated false statements sort of justify it in this particular case? Your Honor, I would say that if the District Court tied those things together, that maybe that would be an argument. But here, what the District Court did here was merely recite, as I'm reciting back to his PSR, I'm citing back to this, and didn't discuss each individual condition. And in Boyd, the same thing happened. In Boyd, this court recognized that the court discussed his criminal history and his priors, right? Almost all of the cases that are coming before you on these are 922Gs. So by definition, these defendants have prior crimes. And so the fact that he merely recites to it. These prior crimes are not, these prior crimes are specifically, specifically about giving false information. Right. And the District Court did not point to that. The District Court pointed broadly to the PSR and to his prior criminal history and the serious nature of the 922G. So he's got to go through and say, I'm talking about the PSR, but I need to go through and talk to you about this conviction and why it is this. I think that he needs to. That's your view. You got to go through them. You can't incorporate by reference. I think that's, you know, when Mr. Garris gave a specific objection, the District Court needed to address that specific objection. For example, I find that the felon condition is appropriate here because you engaged in this conduct with another felon. So we're not asking a lot here. It could be one sentence where the District Court actually ties Mr. Garris' history to the actual objection that he has made. And that didn't happen here. And so for that reason, we would argue that this court should remand. And with respect to the supervised release issue, do you want to remand as to all of them? Your Honor, my... Just the four you have identified. No, Your Honor. My position is that as to all of the conditions, this court should remand because the District Court failed to provide an explanation and or failed to address any of Mr. Garris' non-frivolous arguments. And under this court's authority in Boyd and Comer and Van Donk and McMillan and Ross, that is not... It is just not sufficient. And the District Court here did not do that and it needs to be remanded for him to correct that omission. Can I ask one final question if I might, Judge? If we find one of them... So just pick a number. If we find one of them isn't adequately explained or is incorrect, doesn't that mean that we have to send the whole thing back and the judge has to do it again? That's correct, Your Honor. That's the sort of single-sentence rule. And so you say you want them on all, but the real answer is all you need is one. And once you get one, then we can send it back and the court can take account of all the intervening case law. Well, I would ask this court to be clear in its remand order that the District Court can and should do that. Isn't that sort of advisory, right? Because we've sort of said, once we say, you got this one wrong, that means we have to vacate the entire sentence and send it back. Don't we then just say, like, you know, we assume the court will take account of all intervening case law? I would assume so, Your Honor, but I would say that in my experience that has not always been the case in terms of looking at all of the supervised release conditions anew based on intervening authority. And so I would just ask that it be clear that that is the scope of the remand. If we wanted to, we could affirm on the sentence, on the imprisonment, and vacate on the supervised relief issue. Yes, I think that's correct, Your Honor. That wouldn't be vacating on the... That's correct. I think that's correct, Your Honor. If there are no further questions, thank you very much. Thank you all. Thank both of you very much. We appreciate your work and your help in these cases. And if we could do so, we'd come down and greet you and shake your hands. But we can't do it under the present circumstances. Maybe we'll do it next year.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan